**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYME DIVISION**

MELANIE GINGERICH-GOSHORN,    )
          Plaintiff,    )
                        )
          v.    )    CAUSE NO.: 1:20-CV-330-JEM
                        )
KILOLO KIJAKAZI, Acting Commissioner )
of the Social Security Administration,    )
          Defendant.    )

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Melanie Gingerich-Goshorn on September 16, 2020, and Plaintiff's Opening Brief [DE 24], filed July 29, 2021. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On September 7, 2021, the Commissioner filed a response. No reply was filed.

**I.    Background**

On July 29, 2014, Plaintiff filed an application for benefits alleging that she became disabled on February 28, 2013. Plaintiff's application was denied initially and upon consideration. After a hearing and unfavorable decision by the ALJ that was appealed to the District Court when the Appeals Counsel denied her request for review, the case was remanded for further proceedings on August 23, 2018. On June 20, 2019, Administrative Law Judge ("ALJ") Stephanie Katich held a hearing at which Plaintiff, with an attorney, and a vocational expert ("VE"), testified. On July 22, 2019, the ALJ issued a second decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1.    The claimant meets the insured status requirements of the Social Security Act through June 30, 2015.

2.    The claimant has not engaged in substantial gainful activity during the

1

period from her alleged onset date of February 28, 2013, through her date last insured of June 30, 2015.

3.      Through the date last insured, the claimant had the following severe impairments: degenerative disc disease; depressive disorder with psychotic features, posttraumatic stress disorder ("PTSD"), attention deficit disorder ("ADD"), and generalized anxiety disorder.

4.      Through the date last insured, the claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.      Through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant could never climb ladders, ropes or scaffolds but could occasionally use ramps and stairs; and occasionally balance, stoop, kneel, crouch, and crawl. The claimant must avoid concentrated exposure to fumes, odors, dusts, gases, and other similar respiratory irritants. In addition, the claimant could understand, remember, and carry out simple instructions and tasks, she could make judgments on simple work-related decisions, she could respond appropriately to occasional and superficial interactions with coworkers and supervisors, she could respond appropriately to usual situations and could deal with routine changes in a routine work setting but should have avoided work activity requiring interactions with the general public.

6.      Through the date last insured, the claimant was unable to perform any past relevant work.

7.      The claimant was an individual closely approaching advanced age on the date last insured.

8.      The claimant has a limited education and is able to communicate in English.

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10.     Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant can perform.

11.     The claimant was not under a disability, as defined in the Social Security

USDC IN/ND case 1:20-cv-00330-JEM   document 26   filed 03/16/22   page 3 of 7

> Act, from February 28, 2013, the alleged onset date, through June 30, 2015,
> the date last insured.

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final

decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate

Judge to conduct all further proceedings and to order the entry of a final judgment in this case. [DE

16]. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42

U.S.C. § 405(g).

## II.      Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and

indicates that the Commissioner's factual findings must be accepted as conclusive if supported by

substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will

reverse only if the findings are not supported by substantial evidence, or if the ALJ has applied an

erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial

evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v.

Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the

evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment

for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227

F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the

question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning

of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ

"uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his or her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## III.   Analysis

Plaintiff argues that the ALJ's Step 5 finding is not supported by substantial evidence because the VE testimony as to methodology was insufficient to establish the reliability of the national job numbers and they do not rise to the level of significance. The Commissioner argues that the ALJ's Step 5 finding is supported by substantial evidence.

4

The VE testified that there were 40,661 routing clerk jobs, 53,046 router jobs, and 50,000 marker jobs in the national economy that Plaintiff could perform. This number is sufficient to support the ALJ's finding. *See Butler v. Kijakazi*, 4 F.4th 498, 502 (7th Cir. 2021) (136,000 jobs nationally); *Mitchell v. Kijakazi*, No. 20-2897, 2021 WL 3086194, at *3 (7th Cir. July 22, 2021) (30,000 jobs); *Primm v. Saul*, 789 F. App'x 539, 546 (7th Cir. 2019) (110,000 jobs); *Engel v. Kijakazi*, No. 20-CV-1206-SCD, 2021 WL 4843871, at *10 (E.D. Wis. Oct. 18, 2021) (23,000 jobs, listing cases).

Plaintiff also argues that the VE's testimony about methodology was insufficient because she could not explain how the Skilltran program for job numbers obtained the job numbers she was using and directed the ALJ to the Skilltran website for more information about the methodology. When asked about whether the DOT categories on which the VE based the numbers she testified about are "based on a statistical study for those specific categories," the VE testified that she was "not sure" because she is "not a statistician." AR 1253. The attorney asked the VE about "the method that some party that you're relying on uses to get from the standard occupational classification codes to the DOT categories" and she explained that the explanation is "available on their website . . . [with] statistical analysis of how they got to those conclusions." AR 1253. Plaintiff argues that this is insufficient reliance on software without explanation that does not meet the ALJ's burden at Step Five. *See, e.g., Maples v. Saul*, No. 1:20-CV-157-PPS, 2021 WL 1291766, at *6 (N.D. Ind. Apr. 7, 2021) ("saying that 'I don't know how to explain it, but it's all on the software'— as the VE said here—doesn't cut it."). The Commissioner argues that Plaintiff did not object to the VE's qualifications as an expert and that the ALJ also questioned the VE about the other factors she used. Indeed, the VE explained that in addition to the website, and because "[t]he DOT and SCO do not address [certain factors]," she also "relied on my professional experiences including

research. job analysis, job placement and employer interviews" and her "knowledge of national and local job markets." AR 1255.

"[T]here is no legal requirement that the ALJ or VE explain the methodology used by the SkillTRAN software," and failure to explain the methodology does not require remand. *Luna v. Berryhill*, No. 1:17CV354-WCL, 2018 WL 2316182, at *4 (N.D. Ind. May 21, 2018) (declining to remand when "[t]he VE explained in his testimony at the hearing that, although he did not have SkillTRAN's methodology memorized, the methodology was available online") (citing *Blankenship v. Colvin*, No. 1:16cv222-WCL, 2017 WL 2805883, at *4 (N.D. Ind. June 29, 2017); *Wilhelm v. Berryhill*, No. 1:17cv22-WCL, 2017 WL 5248285, at *7 (N.D. Ind. Nov. 13, 2017)). In this case, although her explanation was a bit disjointed, "the VE's testimony is sufficiently reliable with respect to the number of representative jobs. The VE relied on the SOC, the DOT" and Skilltran, "and she identified her sources with specificity." *Irwin v. Berryhill*, No. 1:17-CV-00408-SLC, 2018 WL 5873877, at *14 (N.D. Ind. Nov. 8, 2018) ("[T]he VE adequately explained her methodology, which entailed starting with the SOC and DOT (publicized governmental resources), and then using Job Browser Pro (a non-governmental resource) to determine the number of specific jobs per industry, all through the lens[] of her own professional experience.") (citing 20 C.F.R. § 404.1566(d); *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009); *Lawrence v. Astrue*, 337 F. App'x 579, 586 (7th Cir. 2009)). In this case, although "the VE's description did not reveal the precise mechanics and statistical model involved, it nevertheless constitutes a 'reasoned and principled explanation,' at least by the low substantial evidence standard." *Bruno v. Saul*, 817 F. App'x 238, 243 (7th Cir. 2020). The case will not be remanded for a new Step Five analysis.

**IV.    Conclusion**

For the foregoing reasons, the Court hereby **DENIES** the relief requested in Plaintiff's

Opening Brief [DE 24] and **AFFIRMS** the Commissioner of Social Security's final decision**.**

SO ORDERED this 16th day of March, 2022.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:  All counsel of record

7